IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ISIAH MARTIN                                                                 PLAINTIFF

V.                          Case No. 4:25-CV-000385-JM-BBM

FRANK BISIGNANO,[1] Commissioner,
Social Security Administration                                     DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Any objection should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties also may waive the right to appeal questions of fact.

## I.    INTRODUCTION

Isiah Martin ("Martin") applied for Title XVI supplemental security income on October 19, 2021. (Tr. at 15). He alleged disability from autism, post-traumatic stress disorder, multiple-personality disorder, and migraines, beginning January 1, 2013. *Id.* at 73.[2] His claim was denied initially and upon reconsideration, and he requested a hearing

---

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

[2] For supplemental security income claims, the relevant time period begins on the day the application is filed. (Tr. at 16). Accordingly, Martin amended his alleged onset date to October 19, 2021.

before an Administrative Law Judge ("ALJ"). *Id*. at 15. Following the hearing, the ALJ denied Martin's claim on February 23, 2024. *Id*. at 15–23. The Appeals Council denied review on February 21, 2025, and the ALJ's decision now stands as the final decision of the Commissioner. *Id*. at 1–7.

Martin seeks judicial review. For the reasons stated below, this Court recommends that the decision of the Commissioner be reversed and that this case be remanded for further proceedings.

## II.    THE COMMISSIONER'S DECISION

At step one of the sequential five-step analysis,[3] the ALJ found that Martin had not engaged in substantial gainful activity since his application date—October 19, 2021. (Tr. at 17). At step two, the ALJ found that Martin had the following medically-determinable and severe impairments: autism, anxiety, and post-traumatic stress disorder. *Id*. After finding that none of these impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Martin had the residual functional capacity ("RFC") to perform work at all exertional levels with the following limitations: (1) can understand, remember, and carry out 1-3 step simple, routine, tasks; (2) can have

*Id*. at 15.

[3] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920(a)(4).

no forced-pace, assembly-line, or production-rate jobs; and (3) can occasionally deal with the public, relate to coworkers, and interact with supervisors. *Id*. at 18–19.

The ALJ found that Martin has no past relevant work. (Tr. at 22). Based on the testimony of a vocational expert, the ALJ found that a significant number of jobs exist in the national economy for someone with the same age, education, work experience, and RFC as Martin. *Id*. at 22–23. As a result, the ALJ concluded that Martin is not disabled. *Id*. at 23.

## III.    DISCUSSION

### A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Martin's Arguments on Appeal

Martin asserts multiple grounds for reversal: (1) that the ALJ erred in how he evaluated medical opinions; (2) that the Appeals Council failed to consider properly or exhibit relevant medical evidence; and (3) that the ALJ did not fully incorporate all of Martin's mental limitations in the RFC. Because the Court agrees that the ALJ committed legal error in his evaluation of the medical-opinion evidence, it will confine its analysis to that outcome-determinative issue.

Under SSA regulations in effect since March 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 404.1520c(a). Instead, ALJs are required to analyze whether medical-opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant (which "combines consideration" of (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship); (4) provider specialization; and (5) any other important factors. 20 C.F.R. § 404.1520c(c). "The most important factors . . . are supportability . . . and consistency," 20 C.F.R. § 404.1520c(a);

*see Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, *1 (8th Cir. May 31, 2022) (per curiam) (describing SSA regulations as establishing that a medical opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record") (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

"ALJs are required to 'explain' their decisions as to . . . supportability and consistency"—and, in most instances, "'should also explain how [they] considered the remaining factors'"—so that claimants and "'subsequent reviewers'" have "'a full understanding'" of the ALJ's "'rationale'" and "'analysis of the evidence.'" *Phillips v. Saul*, No. 1:19-cv-34-BD, 2020 WL 3451519, *2 (E.D. Ark. June 24, 2020) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings—Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).[4]  ALJs also must "'resolve'" any "'conflicts among the opinions of various treating and examining physicians.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). Ultimately, "an ALJ must comply with the regulations governing how the agency evaluates opinion evidence," and a "failure" to do so is "legal error," *Taylor v. Bisignano*, No. 4:24-cv-00843-LPR-BBM, 2026 WL 468907, *5 (E.D. Ark. Jan. 13, 2026) (footnote omitted), *adopted*, 2026

---

[4] *See also Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do."); *Guess v. Kijakazi*, No. 4:20-cv-887-JTR, 2021 WL 5983193, *4 (E.D. Ark. Dec. 17, 2021) ("[A]n ALJ must address both supportability and consistency with respect to a medical opinion, and he must offer good reasons for his determination. Merely sprinkling his discussion with those two words does not suffice.").

WL 466711 (E.D. Ark. Feb. 18, 2026).[5]

In this case, the ALJ found that Martin has three "severe impairments," *i.e.*, autism, anxiety, and post-traumatic stress disorder, but the ALJ nonetheless denied Martin's claim. (Tr. at 17, 23). In doing so, says Martin, the ALJ did not properly explain his assessment of the medical opinions. This Court agrees with Martin.

On March 23, 2022, Martin had a consultative examination with John Faucett, Ph.D. (Tr. at 353–57). During that examination, Martin reported that he (1) has flashbacks of traumatic childhood events; (2) is easily overstimulated; (3) has memory deficits; (4) failed several grades in school; (5) was terminated from his only known job for difficulty interacting with customers; and (6) is prone to violent outbursts and engaged in violent behavior towards classmates while in school. *Id.* at 353–54, 356. Dr. Faucett's observations during the examination were that Martin (1) had poor eye contact and was extremely nervous; (2) exhibited poverty and paucity of content in his conversation; and (3) exhibited an extremely anxious mood. *Id*. at 353–54. Dr. Faucett concluded that Martin could perform most mental functions at a job without difficulty, such as sustaining concentration and performing basic work tasks in an acceptable time frame. *Id*. at 356–57.

The ALJ found Dr. Faucett's opinion to be persuasive as it was "consistent with [the] examination and generally supported by the record. The claimant demonstrated the

---

[5] *See Lucus*, 960 F.3d at 1069–70 (where ALJ discredited physician's opinion without discussing "the factors listed" in the governing regulation, remand was required because a "failure to comply with SSA regulations . . . is legal error"); *see also Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (remanding where ALJ "did not address whether [a physician's] opinion was consistent with the other evidence of record, as required by the applicable regulation") (citing *Lucus*, 960 F.3d at 1069–70; 20 C.F.R. § 404.1520c).

capacity to sustain persistence in completing the exam and adequately attended to and sustained concentration on tasks of the evaluation." (Tr. at 21). It appears to the Court, however, that Dr. Faucett's opinion on Martin's mental RFC conflicted with his own observations of Martin during the examination, including Martin's "flat" affect, "extremely anxious mood," "guarded . . . defensive" attitude, and "poverty" of conversation. *Id.* at 353–54. And the ALJ did not resolve this conflict as the law requires. *See*, *e.g.*, *Wagner*, 499 F.3d at 848; *Pearsall*, 274 F.3d at 1219.

The state-agency psychological experts also reviewed the records and found that Martin had the capacity for work where interpersonal contact is incidental to the work performed; complexity of tasks is learned by rote with few variables and little judgment; and the supervision required is simple, direct, and concrete. (Tr. at 21, 76, 86). The ALJ found those opinions to be somewhat persuasive because they were consistent with and supported by the record. He added that "[t]he record supports a limitation to simple work with an additional limitation with interacting with others as assessed above." *Id.* at 21. Then, in the RFC, the ALJ imposed this limitation on Martin's interactions: occasionally can deal with the public, relate to coworkers, and interact with supervisors. *Id.* at 19. The ALJ did not address the level or nature of the supervision that Martin would require, as did the state-agency psychological experts.

The ALJ also discussed the opinion of Robin Barnes, LCSW, Martin's treating therapist, who opined that Martin could not handle a work environment in his present mental state. (Tr. at 22, 427–28). Barnes reported that Martin has a history of meltdowns that consist of a lot of anger. *Id.* at 428. She noted that he suffers from Dissociative Identity

Disorder and has different identities. *Id*. at 427. The ALJ found this opinion unpersuasive because, in his view, it was not consistent with or supported by evidence of record, and a determination of disability is a matter reserved for the Commissioner. *Id*. at 22. That was the extent of his analysis; the ALJ did not point to specific inconsistencies (or general inconsistencies even) or areas lacking support.[6]

In sum, the ALJ's analysis of the persuasiveness of the medical opinions was cursory at best. The ALJ neither cited to the record nor explained his findings on consistency and supportability. It remains unclear why the ALJ did not incorporate the more restrictive RFC of the state-agency experts into the assigned RFC. Indeed, the ALJ devoted only one page of his decision to a discussion of Martin's symptoms, and he did not incorporate any symptom discussion in the medical-opinion review, which was also only one page. (Tr. at 20–21). Where inadequacies in an ALJ's analysis frustrate meaningful review, remand is warranted. *See Smith v. Comm'r of Soc. Sec. Admin.*, No. 4:22-cv-01273-JM-JTK, 2023 WL 6845857, *4 (E.D. Ark. Oct. 17, 2023) (noting that "anemic explanation by the ALJ frustrates meaningful judicial review"), *approved and adopted by* 2023 WL 7646670 (E.D. Ark. Nov. 14, 2023). In this case, the medical opinions

---

[6] The Court acknowledges that an LCSW is not an "acceptable medical source" for purposes of determining whether Martin has a "medically determinable impairment" at Step Two. *See* 20 C.F.R. § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."); *Id*. § 416.902(a) (listing acceptable medical sources). However, for claims filed after March 27, 2017, such as Martin's, "all medical sources, not just acceptable medical sources, can make evidence that [the Social Security Administration] categorize and consider as medical opinions." Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01; *see also Jeannie M.B. v. Kijakazi*, Case No. 21-CV-0438(JFD), 2022 WL 2835067, *5–7 (D. Minn. July 20, 2022) (noting that although a chiropractor was not an acceptable medical source, the ALJ was required to evaluate supportability and consistency of chiropractor's medical opinion).

were somewhat conflicting, and, as mentioned, the ALJ did not harmonize or distinguish them, as required by law. For these reasons, reversal is warranted.

## IV.    CONCLUSION

IT IS THEREFORE RECOMMENDED THAT the Commissioner's decision be REVERSED and that this case be REMANDED for further proceedings.

DATED this 5th day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE